UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------

BENJAMIN MORDUKHAEV, et al.,

                                                    Plaintiffs,

          -against-

                                                    09 Civ. 5149 (SHS) (RLE)

MATTHEW DAUS, et al.,

                                                    Defendants.

------------------------------------------------------------------------

# DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT II OF THE SECOND AMENDED COMPLAINT

MICHAEL A. CARDOZO
Corporation Counsel of the
 City of New York
Attorney for Defendants
100 Church Street
New York, New York 10007

Of Counsel:

    Gabriel Taussig
    Robin Binder
    Mark W. Muschenheim

September 22, 2009

## TABLE OF CONTENTS

**Page**

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT............................................................................................................................ 6

      PLAINTIFF MORDUKHAEV'S FEDERAL DUE PROCESS RIGHTS WERE NOT VIOLATED. ................................................................................................................ 6

            A. TLC Properly Relied on the Complainant's Sworn Statement in Reaching its Decision ....................................................... 7

            B. The Pre-Deprivation Notice Provided to Mordukhaev Complied with Constitutional Mandates ......................... 10

            C. In Any Event, the Availability of a New York State Article 78 Proceeding to Contest an Administrative Determination Bars Mordukhaev's Due Process Claim....................... 11

CONCLUSION....................................................................................................................... 12

Defendants Matthew Daus, Raymond Scanlon, Carmena Schwecke, the New York City Taxi and Limousine Commission ("TLC") and the City of New York ("City") (collectively "Defendants"), by their attorney, Michael A. Cardozo, Corporation Counsel of the City of New York, submit this memorandum of law in opposition to plaintiffs' motion for summary judgment on count II of the second amended complaint.[1]

## FACTUAL BACKGROUND[2]

In the afternoon of September 3, 2006, the TLC received (via the 311 system) a complaint that the driver of the taxi bearing medallion number 3H72 had overcharged a passenger, James Hering of Fresno, California, for a trip from midtown Manhattan to John F. Kennedy International Airport. Declaration of Mark Muschenheim, sworn to September 22, 2009 ("Muschenheim Decl."), Ex. A (TLC Passenger Complaint/Compliment form). The complaint stated that Hering had given the driver $50.00 upon arrival at the airport, and that the driver claimed Hering had only given $35.00; Hering then gave the driver an additional $15.00. Later that month Hering sent the TLC a notarized letter that set forth in more detail the events of that afternoon. Muschenheim Decl., Ex. B (9/19/06 Ltr. from Hering to TLC). Hering stated

---

[1] On July 28, 2009, defendants moved to dismiss the entire second amended complaint. Docket # 13-15. That motion is scheduled to be fully submitted on October 21, 2009. Docket # 23. In the event that defendants' motion to dismiss as to Count II is denied, since the material facts are not in dispute, defendants respectfully request that summary judgment be granted to the defendants on that count for the reasons set forth herein. Ramsey v. Coughlin, 94 F.3d 71, 74 (2d Cir. 1996).

[2] While defendants dispute plaintiffs' characterization of many of the facts set forth in their Local Rule 56.1 statement, these characterizations are ultimately irrelevant because they do not involve material facts necessary to resolve the plaintiffs' motion for summary judgment. Accordingly, defendants will not be submitting a response to the plaintiffs' 56.1 statement. Defendants nevertheless note that plaintiffs' 56.1 statement repeatedly failed to comply with Local Rule 56.1(d) since numerous statements were not "followed by citation to [admissible] evidence." See Pls.' 56.1 Stmt, ¶¶ 1, 3, 4-6, 8-9, 11-12, 14-15, 17-20. These paragraphs should not be considered.

1

that in the afternoon of September 3, 2006 he and his 17 year old son entered the taxi bearing medallion number 3H72 at 47th and Broadway, and that several blocks into the trip he noticed that the meter was already set at $45.00, and that when Hering asked why, the driver replied that "that was just the way he did it." Id. When Hering arrived at the airport, he gave the driver $50.00, and thereafter the driver came up to him and claimed that he had only given the driver $35.00. Hering gave the driver an additional $15.00, and shortly thereafter called 311 and initiated a complaint. Id.

After receiving this complaint, the TLC initiated an investigation, and was informed by the medallion owner that the driver on September 3, 2006 was Roman Mordukhaev. Muschenheim Decl., Ex. C (10/4/06 Affidavit from Avenue M Management Corp. & 10/2/06 TLC Letter). The owner also stated that the driver had not submitted a trip sheet for that day.[3] Id. TLC consequently scheduled a hearing, and at that hearing Roman Mordukhaev produced a trip sheet for September 3, 2006 and testified that he was not the driver of the taxi on that day, but that his brother, plaintiff Benjamin Mordukhaev, did drive the taxi on that day. Muschenheim Decl., Exs. D (10/11/06 TLC Notice of Hearing & 10/31/06 Notice of Summons Disposition) & E (9/3/06 Trip Sheet). The charge against Roman Mordukhaev was dismissed. Id.

Thereafter, on December 15, 2006, the TLC issued a Notice of Hearing relating to summons number 378361R to Benjamin Mordukhaev. That notice provided in pertinent part:

---

[3] Pursuant to applicable rule, 35 RCNY § 2-28, effective in September 2006, a taxi driver was required to keep a written trip record that recorded, among other things, the starting time of each trip, the starting location, the ending time of each trip, ending location and the amount of the fare. 35 RCNY § 2-28(a). The driver was also not permitted to make any erasures or obliterations on the trip record, was not permitted to rewrite the trip record, and was required to submit "his trip sheet to the owner at the conclusion of this shift or lease period." 35 RCNY § 2-28(c)-(e).

> You are hereby summoned to appear for a hearing at the New York City Taxi and Limousine Commission ... on 1/5/2007.
>
> Complaint No: 378361 has been filed against you, charging you with the following violations which occurred at 47th St & Bway on 9/3/2006 at 3:00 pm ...
>
> | | |
> |---|---|
> | 2-61A2 | Action against public interest |
> | 2-34A | Driver cannot charge inflated fare |
> | 2-34B | Separate fares cannot be collected |
> | 2-34C | Failure to give correct change |
> | 2-61A | Fail to act in the best interest |
>
> When appearing at a hearing – You have rights and obligations
>
> 1. You may be accompanied by counsel and/or bring witnesses and documents with you ....
>
> 2. Bring trip sheet for the day involved, as well as any other evidence that supports your case.
>
> 7. If you are found to have violated Rule 2-34A by charging or attempting to charge a fare of ten dollars or more above the approved rate of fare, your hack license will be revoked.

Muschenheim Decl., Ex. F (12/15/2006 TLC Notice of Hearing).

On January 5, 2007, plaintiff Mordukhaev appeared for a hearing. Although Mordukhaev was informed of his right to bring counsel to the hearing, he appeared by himself. The presiding Administrative Law Judge ("ALJ") began the hearing by stating that this "is going to be a hearing by affidavit," and then reading the complainant's sworn statement into the record. Muschenheim Decl., Ex. G, at 2 (1/5/07 Tr.). Mordukhaev did not object to this statement. Id. While Mordukhaev's chief defense appears to be that he could not have been the driver since he claims he is six inches shorter[4] than the driver described in Hering's letter, he never explicitly

---

[4] In fact, it appears that the difference is four inches. While Mordukhaev claimed at the hearing before the ALJ that he was 5'3" tall, at the administrative appeal he submitted a copy of

3

states that he did not take Hering to the airport that day. Id. at 6, 10-11, 18. More importantly, Mordukhaev produced a trip sheet for September 3, 2006 that was not identical to the one his brother had produced for the same day. Compare Muschenheim Decl., Exs. H (9/3/06 Trip Sheet produced at B. Mordukhaev's hearing) & E (9/3/06 Trip Sheet produced at R. Mordukhaev's hearing). The ALJ expressed his disbelief with these two trip sheets: "This is outrageous. Do you know what this does to your credibility? I'm looking at one trip sheet, and you're handing me another, a different trip sheet – ." Muschenheim Decl., Ex. G, at 7-8. The ALJ's questioning of Mordukhaev's credibility was reinforced by Mordukhaev's subsequent testimony when the ALJ questioned Mordukhaev about the trip sheet he had submitted, and specifically how it was possible for Mordukhaev to drive from 1500 McDonald Avenue in Brooklyn to 14th Street and 6th Avenue in Manhattan in 15 minutes. Id. at 13-15; Muschenheim Decl. Ex. H (9/3/06 Trip Sheet produced at B. Mordukhaev's hearing). Separate and apart from Mordukhaev's lack of credibility, at no time during the hearing did Mordukhaev either request an adjournment to investigate the veracity of the complainant's statement or request that the complainant, Hering, be made available for cross-examination.

After a recess, the ALJ concluded that Mordukhaev had violated TLC rule 2-34(a) (35 RCNY § 2-34(a)). Specifically, the ALJ ruled that upon comparison of the two trips sheets:

> it is clear that one or both of the trip sheets is a false document…. The handwriting and signatures are practically identical; however, that is where the similarities end…. The start of the trip, time, end of trip, time, fares, et cetera, contain different, but sometimes similar information. Importantly, neither trip sheet shows that Respondent made a pick-up at 47th Street and Broadway at

---

his driver's license that indicates that he is 5'5" tall. Muschenheim Decl., Ex. J, at Bates TLC 000001039.

4

> approximately 3:00 P.M. with a destination of JFK Airport.

Muschenheim Decl., Ex. G, at 21-22. The ALJ concluded that neither the trip sheets nor Mordukhaev's testimony was credible:

> In light of the fact that the affidavit produced by the owner of the vehicle states that quote, 'the driver did not submit the trip sheet to the office' unquote, and that Respondent's brother produced one trip sheet and respondent produced another .... I find neither document to be credible. I also do not credit Respondent's claim that he rarely goes to JFK Airport to be credible. I do not find any part of Respondent's testimony to be credible.

Id. at 22. The ALJ then determined that the fare that Mordukhaev charged his passenger exceeded $10.00, and consequently revocation of Mordukhaev's license was mandated pursuant to 35 RCNY § 2-87(b). Id. at 22-23. A written decision was also issued that is substantially similar to the oral ruling. Muschenheim Decl., Ex. I (Notice of Summons Disposition).

Mordukhaev appealed the ALJ's decision through an attorney. Muschenheim Decl. Ex. J (1/11/07 Mordukhaev Appeal Form). On May 23, 2007, the TLC's Chief Administrative Law Judge affirmed the ALJ's decision, and revoked Mordukhaev's TLC license. Muschenheim Decl. Ex. K (5/23/07 TLC Decision). Mordukhaev did not contest TLC's May 2007 decision by filing a New York Civil Practice Law and Rules ("CPLR") Article 78 proceeding within the four-month Article 78 statute of limitations set forth in CPLR 217.

Even though his license was revoked, Mordukhaev nevertheless continued to drive a taxi for more than 200 days between October 2008 and May 2009 (according to electronic trip sheet data retained in accordance with recent amendments to the TLC rules), and was issued ten summonses for nine different dates between March 2008 and April 2009. Declaration of Alison Hartwell, sworn to September 22, 2009, ¶ 2-3.

More than two years after the issuance of TLC's May 2007 decision, Mordukhaev commenced this action.[5]

## ARGUMENT

## PLAINTIFF MORDUKHAEV'S FEDERAL DUE PROCESS RIGHTS WERE NOT VIOLATED.

Plaintiffs incorrectly contend that Mordukhaev's TLC license was revoked without due process of law. "The touchstone of due process, of course, is 'the requirement that a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'" Spinelli v. City of New York, _ F.3d _, 2009 U.S. App. Lexis 17640, *19 (2d Cir. Aug. 7, 2009) (quoting Matthews v. Eldridge, 424 U.S. 319, 348-49 (1976)). Here Mordukhaev was given notice of the charges against him when TLC sent him a Notice of Hearing. Muschenheim Decl., Ex. F. And Mordukhaev was given an opportunity to be heard as well when he appeared before the ALJ in January 2007. Muschenheim Decl., Ex. G. During that hearing Mordukhaev was given an opportunity to set forth his side of the story, which he did by claiming that the complainant must have been wrong since Mordukhaev is not as tall as the height approximation provided by complainant. Based on the submission of two separate trip sheets for the same day, as well as other testimony, the ALJ found Mordukhaev's testimony to be not credible, and determined that Mordukhaev's license should be revoked. Muschenheim Decl., Ex. G, at 21-22. Mordukhaev administratively appealed this decision through an attorney, and

---

[5] This action is designated as related to Rothenberg v. Daus, 08 Civ. 567, which contests TLC's revocation procedures. While the instant action primarily involves a challenge to the process that is followed when a driver whose license has been revoked re-applies for a TLC license, the instant motion relates only to Count II of the Second Amended Complaint, which only concerns the revocation of Mr. Mordukhaev's license.

that appeal was denied. Muschenheim Decl., Ex. J. Since these events provided Mordukhaev with the requisite notice and opportunity to be heard, his due process rights were not violated.

### A. TLC Properly Relied on the Complainant's Sworn Statement in Reaching its Decision.

Plaintiffs nevertheless contend that the Mordukhaev administrative hearing "was constitutionally deficient" because he had no opportunity to cross-examine the complainant, James Hering. It is well settled, however, that the due process clause is not violated when hearsay evidence (such as Hering's sworn statement) is submitted in an administrative hearing. See, e.g., Richardson v. Perales, 402 U.S. 389, 402 (1971) (although doctor not subject to cross-examination, a report authored by the doctor can constitute substantial evidence even when there is contradictory testimony by the adversary's doctor); Yancy v. Apfel, 145 F.3d 106, 112 (2d Cir. 1998). And New York state courts are no different. Courts have repeatedly upheld administrative determinations based upon hearsay evidence. People ex rel. Vega v. Smith, 66 N.Y.2d 130, 495 N.Y.S.2d 332 (1985) (administrative disciplinary determinations based on written reports do not violate due process); Gray v. Adduci, 73 N.Y.2d 741, 536 N.Y.S.2d 40 (1988). Hearsay evidence alone may constitute substantial evidence when sufficiently relevant and probative of the issues being decided. Vega, 66 N.Y.2d at 139, 495 N.Y.S.2d at 337; BiCounty Brokerage South Corp v. State of New York Ins. Dep't, 4 A.D.3d 470, 471, 771 N.Y.S.2d 691 (2d Dep't 2004); Gelco Builders, Inc. v. Holtzman, 168 A.D.2d 232, 562 N.Y.S.2d 120 (1st Dep't), appeal den'd, 77 N.Y.2d 819, 571 N.Y.S.2d 913 (1990). In fact, statements from absent witnesses may form the sole basis for an agency's ultimate determination. Harry's Chenango Wine & Liquor, Inc. v. State Liquor Authority, 158 A.D.2d 804, 550 N.Y.S.2d 951 (3d Dep't 1990) (upholding suspension of liquor license based on sworn statement that was contested by plaintiff's employees).

The ALJ presiding over Mordukhaev's administrative hearing properly relied on the sworn statement of the complainant.[6] The ALJ's reliance on the sworn statement, and the rejection of Mordukhaev's attempted defense, was certainly permissible given Mordukhaev's lack of credibility that was highlighted by the fact that two separate trip sheets for the same day were submitted to TLC (which indicates a clear violation of the trip sheet rules set forth at 35 RCNY § 2-28).

Disregarding recent case law that clearly indicates that hearsay evidence can be introduced at an administrative hearing and indeed form the basis of an administrative determination, Mordukhaev instead mistakenly relies on a 55 year old case, Hecht v. Monaghan, 307 N.Y. 461 (1954). More importantly, the decision in that case was based on numerous irregularities not present here: the witnesses that identified the driver were not sworn, there was no actual testimony that the driver had committed the charged violation (withholding change), and the license revocation "was <u>expressly</u> based upon his 'record here' and his 'actions in this case today.'" Id. at 473 (emphasis in original). The Court, however, was mystified as to what "this 'record' was" since it "does not appear anywhere in the minutes of the hearing."[7] Id.

Mordukhaev also claims that TLC did not comply with the City Administrative Procedures Act, New York City Charter § 1046(c). Preliminarily, the role of the federal courts

---

[6] The non-appearance of the complainant was due to the fact that he lived in California. Because those who operate taxis in New York City frequently provide service to out-of-town visitors, TLC is often faced with attempting to take enforcement action on the basis of complaints by people who have already left New York City to return home. It would be an insupportable administrative burden on TLC if it had to pay the enormous transportation and lodging costs of out-of-towners returning to New York City for hearings and if hearings had to be delayed to meet the schedules of those complainants. See Vega, 66 N.Y.2d at 141-2, 495 N.Y.S.2d at 338-9. Cf. Yancy, 145 F.3d at 113 ("we agree that practical concerns strongly militate against adopting a rule establishing an absolute right to subpoena reporting physicians").

[7] Finally, the Court did not order that defendants pay damages or reinstate the driver license, but rather merely remanded the matter to the agency for a new hearing. Hecht, 307 N.Y. at 474.

8

in determining whether Mordukhaev's due process rights were violated is not to determine whether TLC complied with every applicable local legal provision, but rather "to determine only whether the state has provided adequate avenues of redress to review and remedy arbitrary action. Section 1983 is not a means for litigating in a federal forum whether a state or local administrative decision was wrong or even whether it was arbitrary and capricious." Alfaro Motors Inc. v. Ward, 814 F.2d 883, 888 (2d Cir. 1987) (citations omitted). In any event, Mordukhaev's claim (based on Charter § 1046(c)(1) which provides a party an opportunity "to cross-examine opposing witnesses") that he had a right to cross-examine the complainant is misplaced. The right to cross examination set forth in that provision attaches only when a witness is called to testify in the administrative hearing, but does not require that one who submits a sworn statement be called as witness or that the sworn statement cannot be introduced at the administrative hearing. See, e.g. Gray, 73 N.Y.2d at 743 (analogous provision of state administrative procedure act that provides that a "party shall have the right of cross-examination" not violated by reliance on police officer's written report).

Finally, even assuming arguendo that Mordukhaev had a right to cross-examine complainant, Mordukhaev waived that right when he failed tell that ALJ that he wanted to cross-examine the complainant. A review of the transcript indicates that Mordukhaev made no such request. Muschenheim Decl., Ex. G. See, e.g., Nappi v. Heckler, 1984 U.S. Dist. Lexis 16882, *5 (May 8, 1984) (no violation of due process where there "is nothing in the record … which suggests that plaintiff attempted to call [report's author] as a witness…. At a minimum, plaintiff should have mentioned that [the author's] absence frustrated plaintiff's intention to cross-examine an important witness …. plaintiff's failure to call [the author] or to object in any way to his absence constitutes a waiver of plaintiff's right to cross-examine [the author]"); Matter of

Eagle v. Patterson, 57 N.Y.2d 831, 832, 455 N.Y.S.2d 759, 760 (1982) ("Nor, since petitioners made no request that homeowners be called as witnesses, did the hearing officer's failure to do so offend the petitioners' due process rights." (citations omitted)).

B. **The Pre-Deprivation Notice Provided to Mordukhaev Complied with Constitutional Mandates.**

Plaintiffs also incorrectly claim that the notice issued to Mordukhaev was constitutionally defective. As noted by plaintiffs, to comply with due process requirements, notice "must set forth the alleged misconduct with particularity." Spinelli, 2009 U.S. App. Lexis 17640, *25 (quoting In re Gault, 387 U.S. 1 (1967)). The Second Circuit noted that the notice requirements differ depending on the situation: "The particularity with which alleged misconduct must be described varies with the facts and circumstances of the individual case." Id. at *25-26. In Spinelli, the post-deprivation notice consisted of mere "cursory letters [that] only informed [plaintiff] of the license suspension and the status of the investigation [and contained] only a conclusory statement that security at [plaintiff's gun shop] was inadequate, there was no specificity as to the actual infractions." Id. at *26. In addition, these cursory letters failed to inform plaintiff that she had a right to a hearing to contest the government agency's determination that suspended plaintiff's license. Id. at *5.

In contrast to the cursory notice in Spinelli, here the pre-deprivation notice to Mordukhaev specified the date, time and starting location of the overcharge incident (and a quick reference to the required trip sheet would indicate the ending location). Moreover, the notice also set forth the specific TLC Rule provisions -- including rule TLC rule 2-34A -- that Mordukhaev was accused of violating. In addition to the specific charges, the notice also stated that "If you are found to have violated Rule 2-34A by charging or attempting to charge a fare of ten dollars or more above the approved rate of fare, your hack license will be revoked." Finally,

since this was a pre-deprivation notice that scheduled a hearing on the specific charges, the notice obviously informed Mordukhaev of his right to a hearing.[8] Muschenheim Decl., Ex. F.

C.  In Any Event, the Availability of a New York State Article 78 Proceeding to Contest an Administrative Determination Bars Mordukhaev's Due Process Claim.

Assuming arguendo that the TLC notice and pre-deprivation hearing were somehow constitutionally infirm, the availability of a post-deprivation New York State Article 78 proceeding to redress such infirmities provides Mordukhaev with the requisite due process. A "due process claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest." Gabris v. New York City Taxi & Limousine Comm'n, 2005 U.S. Dist. Lexis 23391, *8 (S.D.N.Y Oct. 6, 2005) (citing Hudson v. Palmer, 468 U.S. 517, 533 (1984)).[9] New York courts provide such a remedy by way of an Article 78 proceeding. Id. (citing Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001)). Moreover, an "Article 78 proceeding is adequate even though petitioner may not be able to recover the same relief that he could in a § 1983 suit." Hellenic Am. Neighborhood Action Comm. v. City of New York, 101 F.3d 877, 880-82 (2d Cir. 1996). Here Mordukhaev could have contested the TLC decision to revoke his license. Since he failed to do so, this claim should be dismissed "since New York provides a post-deprivation remedy, and plaintiff does not indicate that he has availed himself of that remedy, he cannot claim he was deprived of due process." Gabris, 2005 U.S. Dist. Lexis 23391, *8. See also Locurto v. Giuliani, 264 F.3d 154,

---

[8] Mordukhaev's reliance on Studefin v. New York City Taxi & Limousine Comm'n, 135 Misc. 2d 923 (Sup. Ct., N.Y. Co, 1987) is misplaced. That case related to the appropriateness of withholding a complainant's identity: "In sum, a party is entitled in an administrative proceeding to be advised of the witness appearing against him." Id. at 926. In contrast, here the identity of the complainant, James Hering, was revealed.

[9] In Gabris, as here, plaintiff sought both injunctive relief and monetary damages. Gabris, 2005 U.S. Dist. Lexis 23391, *1.

11

174-75 (2d Cir. 2001) ("An Article 78 proceeding therefore constitutes a wholly adequate post-deprivation hearing for due process purposes." (citations omitted)); <u>Sindone v. Kelley</u>, 2007 U.S. App. Lexis 26463, *2 (2d Cir. 2007); <u>Beechwood Restorative Care Center v. Leeds</u>, 436 F.3d 147, 156-57 (2d Cir. 2006) ("Article 78 provided a 'perfectly adequate post deprivation remedy'"); <u>Fleming v. Kerlikowske</u>, 1999 U.S. Dist. Lexis 7226, *15-17 (W.D.N.Y. May 7, 1999) (collecting cases).

## CONCLUSION

For the foregoing reasons, plaintiffs' motion for summary judgment on count II of the second amended complaint should be denied.

Dated:   New York, New York
         September 22, 2009

>                    MICHAEL A. CARDOZO
>                    Corporation Counsel of the
>                      City of New York
>                    Attorney for Defendants
>                    100 Church Street
>                    New York, New York 10007
>                    (212) 442-0573
>
>                    _____
>                    Mark W. Muschenheim (MM 0498)
>                    Assistant Corporation Counsel

GABRIEL TAUSSIG
ROBIN BINDER

    Of Counsel.