**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

BENJAMIN MORDUKHAEV, ROBERT DYCE, :
MARC BUTCHER, MUSTACH ALI, JORGE AVILA, :
IGOR MODIN and MOHAMMAD BUTT, individually :
and on behalf of all others similarly situated, :
                                         :

                             Plaintiffs, :

             - against - :

MATTHEW DAUS, RAYMOND SCANLON, :
CARMENA SCHWECKE, THE NEW YORK CITY :
TAXI AND LIMOUSINE COMMISSION, and THE :
CITY OF NEW YORK, :
                                         :

                          Defendants. :

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-19-10

**REPORT AND**
**RECOMMENDATION**

**09 Civ. 5149 (SHS)(RLE)**

**To the HONORABLE SIDNEY H. STEIN, U.S.D.J.:**

## I. INTRODUCTION

      Plaintiffs individually and on behalf of all others similarly situated filed their Second

Amended Complaint against TLC Chairperson Matthew Daus, TLC Deputy Commissioner

Raymond Scanlon, TLC Chief Administrative Law Judge ("ALJ") Carmena Schwecke, The New

York City Taxi and Limousine Commission ("TLC" or "Commission"), and The City of New

York ("City"), on July 13, 2009. Plaintiffs bring the instant action under 42 U.S.C. § 1983

alleging violations of the Fourth, Fifth, and Fourteenth Amendments to the Constitution of the

United States, and also claim violations of the New York State Constitution, Article 1, § 12. (2d

Am. Compl. ¶ 7.) They seek an order for injunctive relief directing Defendants to grant the taxi

driver license applications of Plaintiffs and those similarly situated. (*Id.* at 37 ¶ G.) Plaintiffs also

seek a judgment declaring the TLC's post-revocation policies and procedures unconstitutional

and in violation of state law. (*Id.* ¶¶B-E.) Finally, Plaintiffs seek compensatory and punitive damages. (*Id.* ¶¶ H, I.)

On July 28, 2009, Defendants filed a motion to dismiss all counts pursuant to Rule 12(b)(6). On September 8, 2009, Plaintiff Benjamin Mordukhaev filed a motion for summary judgment regarding Count II only, which addresses the alleged unconstitutional nature of his license revocation. (2d Am. Compl. at ¶ 167.) On September 14, 2009, Plaintiffs filed a separate cross-motion on all remaining counts for a judgment on the pleadings or for summary judgment and in opposition to Defendants' Motion to Dismiss. For the reasons that follow, I recommend that Defendants' Motion to Dismiss (Doc. No. 13) be **GRANTED,** and that Plaintiffs' Second Amended Complaint be **DISMISSED**. Specifically, I recommend that: 1) Plaintiffs' federal claims be dismissed for failure to state a claim; 2) Plaintiffs' state claims be dismissed for lack of supplemental jurisdiction; 3) Plaintiffs' claims against agency Defendant TLC be dismissed; and 4) Plaintiffs' claims against individual Defendants Daus, Scanlon, and Schwecke, in their individual and official capacities, be dismissed.

## II. BACKGROUND

Defendant TLC has broad authority to regulate and supervise the New York taxi industry, and to establish standards and criteria for the licensing of drivers. *See* New York City Charter ("N.Y. Charter"), ch. 65, §§ 2300, 2303(a) (2009). In order to obtain a taxicab driver's license, each applicant must: "1) Hold a New York state chauffeur's license; 2) Be nineteen years of age or over; 3) Be of sound physical condition with good eyesight and no epilepsy, vertigo, heart trouble or any other infirmity of body or mind which might render him or her unfit for the safe operation of a licensed vehicle; 4) Be fingerprinted; 5) Be of good moral character; [and] 6) Not be addicted to the use of drugs or intoxicating liquors." New York City Administrative Code

("N.Y. Code") § 19-505(b) (2009). Applicants also must pay a licensing fee, provide two recent photos, be examined as to his or her physical condition, and be examined as to his or her knowledge of the city and pertinent laws. *Id.* at § 19-505(c)-(e).

The TLC also has the authority to revoke a license when it becomes aware of information that the driver no longer meets the requirements for a taxicab driver's license. Rules & Regulations of the City of New York, Tit. 35, § 2-02(f) ("35 RCNY § 2-02(f)") (2009). After a taxi driver has his license revoked and subsequently re-applies, "[i]f the Commission believes [the applicant] does not meet . . . the qualifications for licensure, as set forth in Commission Rules, it may direct that [the applicant] appear for a fitness hearing. Such hearing shall be conducted by an ALJ." *Id.* at § 8-15(a).

The TLC must notify the applicant of the "date, time and location of the hearing and the basis for the Commission's charge that the respondent fails to meet the minimum requirements for licensure." *Id.* at § 8-15(b). The ALJ "review[s] the documentary evidence and testimony submitted by the Commission and afford[s] the applicant an opportunity to respond under oath and to proffer evidence on his or her behalf." *Id.* at § 8-15(d). The ALJ issues a Recommended Decision which includes a determination of the fitness to possess a license. *Id.* at § 8-15(e). If the applicant is or has ever been a licensee, the Recommendation is issued to the Chairperson. *Id.* The Chairperson, Deputy Commissioner for Licensing, or designee, may accept, reject or modify the Recommendation, which shall constitute the final determination of the Commission. *Id.* "If the Commission determines that the applicant has failed to meet the requirements for a taxicab driver's license it will deny the license or its renewal and specify in writing to the applicant the reason for such denial." *Id.* at § 2-02(h).

3

Plaintiffs are seven formerly licensed taxicab drivers who had their licenses revoked, and later applied for reinstatement. Three of the seven named Plaintiffs applied twice. From these ten opportunities, (2d Am. Compl. ¶¶ 11, 22-24), the ALJ recommended granting six license applications, and denying four. Chairman Daus denied the license applications in all ten cases. (*Id.* at ¶¶ 11-24.)

### III. DISCUSSION

#### A. Legal Standard

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may assert a motion to dismiss for failure to state a claim on which relief can be granted. In deciding a motion to dismiss, the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). However, a court is not bound to accept as true a legal conclusion couched as a factual allegation. *Aschcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). A pleading that offers "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Nor does a complaint suffice if it offers "naked assertion[s]" devoid of "further factual enhancement." *Id.* (citing *Twombly*, 550 U.S. at 557).

Under *Twombly*, the court must also apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007); *see Elektra Entm't Group, Inc. v. Santangelo*, No. 06 Civ. 11520 (SCR)(MDF), 2008 WL 4452393, at *2 (S.D.N.Y. Oct 1, 2008). A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Twombly,* 550 U.S. at 556. Only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.*

## B. Plaintiffs' Federal Claims Should be Dismissed

### 1. Plaintiffs' Due Process Claims Under Section 1983 Are Meritless

To prevail in a § 1983 action, a plaintiff must prove: 1) that the challenged practices are attributable, at least in part, to a person acting under color of state law; and 2) that the challenged practices deprive the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States. *Padberg v. McGrath-McKechnie,* 203 F. Supp. 2d 261, 276 (E.D.N.Y. 2002) (citing *Wimmer v. Suffolk County Police Dep't,* 176 F.3d 125, 136-37 (2d Cir. 1999)). Plaintiffs cannot prevail on their § 1983 claim because the challenged policies and practices did not deprive them of their due process rights.

Plaintiffs bring four federal due process claims under the Fourteenth Amendment to the United States Constitution. In Plaintiffs' first claim, regarding the TLC tribunal, they allege that "[b]ecause of the nature of their employment and compensation, TLC judges in fitness hearings are systematically biased in favor of the agency" and the hearings themselves are inconsistent with due process of law. (2d Am. Compl. ¶¶ 160, 162.) The second claim relates to Mordukhaev only, and alleges an unconstitutional revocation of his license. Plaintiffs' third and fourth claims allege a failure to provide fair notice and fair hearings, respectively. Plaintiffs claim that "former taxi drivers may have their license applications denied without published standards established by law" and "without meaningful hearing based on lawfully promulgated standards." (2d Am. Compl. ¶¶ 170, 173.)

### 2. Plaintiffs Have No Legitimate Claim of Entitlement to a Property Interest in a Taxi License Application

The Due Process Clause of the Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law[.]"  In order to assert a violation of procedural due process rights, a plaintiff must "first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994). When alleging a property interest in a public benefit, a plaintiff must first show "a legitimate claim of entitlement" to such interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

#### a.  Plaintiffs' claim is for a protected property interest in a future license

Plaintiffs assert that because they have complied with statutory standards, they have a legitimate claim of entitlement to a taxi driver's license. (2d Am. Compl. ¶ 2.) This broad claim overstates their rights. While it is true that "a taxi driver has a protected property interest in his license [which] trigger[s] due process protection," *Nnebe v. Daus*, 665 F. Supp. 2d 311, 323 (S.D.N.Y. 2009); *Padberg*, 203 F. Supp. 2d at 276, the right applies to those who have already been issued a license. The Due Process Clause limits the state's power to *terminate* such an interest. *Bell v. Burson*, 402 U.S. 535, 539 (1971) (licenses are not to be *taken away* without due process) (emphasis added); *Nnebe*, 665 F. Supp. 2d at 324 (*suspension* of taxicab driver's license without pre-deprivation hearing mitigated by prompt post-deprivation review) (emphasis added). It is true that Plaintiffs had formerly held licenses. The issues here, however, concern their rights when applying or reapplying for licenses. Although Plaintiffs present their argument as a protected interest in a license, what their claims actually propose is that they have a property interest in their *license applications* and/or yet-to-be issued future licenses.

6

**b.  As Applicants, Plaintiffs Have No Property Interest**

When the issuance of a license is discretionary, an applicant cannot demonstrate an entitlement to the license. *Sanitation & Recycling Indus., Inc. v. City of N.Y.*, 107 F.3d 985, 995 (2d Cir. 1997). Absent this entitlement, Plaintiffs have no protected property interest in a future license. *Id.* In *Sanitation & Recycling*, garbage carters brought an action challenging the constitutionality of Local Law 42. *Id.* at 990. This law created the New York City Trade Waste Commission ("TWC"), responsible for the licensing and regulation of the carting business. *Id.* The TWC was authorized to refuse a license "to an applicant who lacks good character, honesty and integrity . . . ." *Id.* at 991. Among the factors the TWC could consider were an applicant's pending criminal actions, prior convictions, and knowing association with convicted racketeers or members of an organized crime group. *Id.* If warranted by "adverse information" developed in the background investigation, the TWC could condition a license on the carter's retention of an independent auditor who would scrutinize the applicant's finances and activities and periodically report them to the TWC. *Id.* While the carters claimed that Local Law 42's "[independent auditor] provision . . . contain[ed] neither objective standards nor provide[d] an opportunity for a hearing," *Id.* at 994, the court found that since the TWC "was vested with broad discretion to grant or deny a license application . . . , the existence of that discretion precluded plaintiffs from showing a legitimate entitlement to one." *Id.* at 995. Therefore, the court held that there was no protected property interest in a possible future license, and that plaintiffs suffered no deprivation of their due process rights. *Id.* Further, absent a property interest, the carters had no right to a hearing. *Id.*

7

Here too TLC is vested with broad discretion to grant or deny a license application. *See Gabris v. N.Y. City Taxi and Limousine Comm'n*, No. 05 Civ. 8083 (HB), 2005 U.S. Dist. Lexis 23391, at *7 (S.D.N.Y. Oct. 6, 2005) (citing *Sanitation & Recycling*, 107 F.3d at 995). As with the TWC, TLC retains a "good" or "moral" character requirement, and while there are factors for the respective commissions to consider, there is no formula to follow. Determining an applicant's character requires the TLC ALJ to assess evidence and make a recommendation, a process that is inherently discretionary. After the ALJ has evaluated the evidence and determined the appropriateness of issuing a license, "[t]he Chairperson, Deputy Commissioner for Licensing, or designee, [has discretion to] accept, reject or modify [the ALJ's] Recommendation." 35 RCNY § 8-15(e). In sum, as a matter of law, the TLC licensing scheme is discretionary, and Plaintiffs have no property interest emanating from their license applications that entitles them to protections. Without establishing this crucial element, Plaintiffs have failed to state a procedural due process claim.

### c. The phrase "shall be issued" does not mean that the TLC regulatory scheme is non-discretionary

Plaintiffs assert nevertheless that "[w]here an applicant meets [TLC] qualifications, the Code permits the TLC no discretion, but requires that the license be issued." (2d Am. Compl. ¶ 2.) Plaintiffs cite the New York City Administrative Code which states, "[u]pon satisfactory fulfillment of the applicable requirements, there *shall be issued* to the applicant a driver's license . . . ." N.Y. Code § 19-505(f) (emphasis added). They argue that use of the phrase "shall be issued" means the TLC has "no discretion to decline." (Pls.' Opp'n to Defs.' Mot to Dismiss, at 13, Sept. 14, 2009); *Walz v. Town of Smithtown*, 46 F.3d 162 (2d Cir. 1995).

Plaintiffs misapply *Walz*. In some circumstances, the discretion of a licensing body can be narrowly circumscribed such that approval of a proper application is virtually assured. *See*

*Walz*, 46 F.3d at 168. In *Walz*, plaintiffs were denied a street excavation permit. *Id.* at 164. The Code stated that if an application form provided "the nature, location, extent and purpose of the proposed excavations . . . . a permit *shall be issued.*" *Id.* at 168 (emphasis added). The court found that the only apparent ground for declining an excavation permit was that the application did not contain all the designated information. *Id.* If the proper information was included, the Superintendent had no discretion to void or to refuse to issue a permit. *Id.* The court therefore concluded that the plaintiffs had a protected property right in receiving an excavation permit. *Id.*

It was not the use of the phrase "shall be issued" but the straightforward and objective nature of the specified information required which mandated the outcome. Here, however, the ALJ must assess subjective criteria. For example, "good moral character" and "addict[ion] to the use of drugs or intoxicating liquors." These determinations call for the use of discretion by the ALJ and the TLC chairperson. The language "shall be issued" cannot be interpreted to mean simply meeting the objective criteria for licensing when the decision makers are also required to exercise sound discretion. Plaintiffs do not have a protected property interest in their license applications or future licenses. Plaintiffs therefore have not stated a procedural due process claim.

### 3. Plaintiffs Fail to State a Substantive Due Process Claim

Plaintiffs claim that the TLC unlawfully and arbitrarily denied licenses because "TLC Chairman Matthew Daus enforces an unwritten and arbitrary policy by which he denies such applications without lawful cause in nearly every case." (2d Am. Compl. ¶ 1.) While Plaintiffs do not explicitly allege violations of substantive due process, the Court construes the language of their Complaint as raising such claims.

Due process protects against arbitrary government action that deprives individuals of a protected interest. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). "In order for a

plaintiff to maintain a substantive due process claim against a municipality, the plaintiff must demonstrate that the municipality's actions were willful, arbitrary, conscience-shocking or oppressive in a constitutional sense." *Collins v. City of Harker Heights*, 503 U.S. 115, 126-28 (1992). However, substantive due process is an "outer limit on the legitimacy of governmental action." *Nnebe*, 665 F. Supp. 2d at 330 (citing *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999)). It does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative action. *Id.* It also does not provide protection against state actions which are merely "incorrect or ill-advised." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). "The fact that [a license] could have been denied on non-arbitrary grounds defeats the federal due process claim." *RRI Realty Corp. v. Vill. of Southampton*, 870 F.2d 911, 918 (2d Cir. 1978). "Focusing on the authority of the local regulator permits the threshold rejection of some federal due process claims without awaiting exploration of whether the regulator acted so arbitrarily as to offend substantive due process in the particular case." *Id.* at 918.

The discretionary function of the TLC regulators provides for the threshold rejection of Plaintiffs' federal due process claims. First, Plaintiffs' have failed to allege facts that demonstrate either a protected interest, or support the conclusory allegations that Daus denied applications based on an unwritten policy. Second, the Chairperson may exercise broad discretion when reviewing an applicant's record and the ALJ's report. The fact that an applicant's license had been revoked is a non-arbitrary ground that could be the basis for a denial. The mere denial of these applications does not shock the conscience, especially given the substantial regulatory scheme. Furthermore, Plaintiffs may seek a remedy through Article 78

proceedings in New York state courts. To the extent that Plaintiffs present claims for violation of their substantive due process rights, such claims should be dismissed.

### 4. An Article 78 Proceeding is the Proper Forum to Adjudicate an Alleged Deprivation of Due Process

The federal court is a tribunal of limited jurisdiction. *Yale Auto Parts, Inc. v. Johnson*, 758 F.2d 54, 58 (2d Cir. 1985) (section 1983 . . . does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license). A due process claim for the deprivation of a property interest is not cognizable in a federal district court if state courts provide a remedy for the deprivation of that property interest. *Gabris*, 2005 U.S. Dist. Lexis 23391, at *8 (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Marino v. Ameruso*, 837 F.2d 25, 47 (2d Cir. 1988)). New York state courts provide for such a remedy through Article 78 proceedings. N.Y. C.P.L.R. §§ 7801, 7803 (McKinney 2008). An Article 78 proceeding "provides the mechanism for challenging a specific decision of a state [or municipal] administrative agency." *Gabris*, 2005 U.S. Dist. Lexis 23391, at *8-9 (quoting *Campo v. N.Y. City Employees' Ret. Sys.*, 843 F.2d 96, 101 (2d Cir. 1988)) (alteration in original). The proceeding "permits a petitioner to submit affidavits and other written evidence; and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims." *Id.* at *8 (quoting *Locurto v. Safir*, 264 F.3d 154, 174 (2d Cir. 2001)).

In *Gabris*, this Court dismissed plaintiff's due process claims *sua sponte* because he had no protectable property interest in a future license, and he did not exhaust his state court remedies using Article 78. *Gabris*, 2005 U.S. Dist. Lexis 23391, at *7-9. The *Gabris* facts are comparable to this case. *Id.* at *2 (applicant denied taxi driver license application after TLC conducted fitness hearing). Here, Plaintiffs Dice Butcher, Ali, Avila, Modin, and Butt cannot

11

claim that they were deprived of due process since they did not allege that they had availed themselves of the state remedies. *See Id.* at *9.

Plaintiff Mordukhaev's claim that his license was unlawfully revoked should also be dismissed because he failed to take advantage of the post-revocation process provided in an Article 78 proceeding. " 'An Article 78 proceeding [] constitutes a wholly adequate post-deprivation hearing for due process purposes.' " *Spinelli v. City of N.Y.*, 579 F.3d 160, 170 (2d Cir. 2009) (*citing Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999)); *Nnebe v. Daus*, 665 F. Supp. 2d 311, 330 (S.D.N.Y. 2009); *Campo v. N.Y. City Employees' Retirement System*, 843 F.2d 96, 101-02 (2d Cir. 1988) (dismissing procedural due process claim based on the availability of Article 78 review of administrative determination). A plaintiff's failure to commence an Article 78 proceeding within the four-month limitations period does not prevent this Court from taking into account the availability of such when determining whether he has been afforded due process. *Fleming v. Kerlikowske*, 1999 U.S. Dist. Lexis 7226, *16-17 (W.D.N.Y. 1999) (*citing Giglio v. Dunn*, 732 F.2d 1133, 1135 (2d Cir. 1984). Because Mordukhaev did not commence an Article 78 proceeding, his due process claim is not cognizable.

## C. Plaintiffs' State Claims Should be Dismissed

Plaintiffs bring state law claims in Counts 5 through 13 of their Second Amended Complaint pursuant to this Court's supplemental jurisdiction as articulated in 28 U.S.C. § 1367. (2d Am. Compl. ¶ 8.) These claims should be dismissed along with the federal claims. A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). "It is well established that when federal claims are dismissed before trial, the state claims should be

dismissed as well." *Avello v. Hammons*, 963 F. Supp. 262, 270 (S.D.N.Y. 1997) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *Castellano v. Bd. of Trustees of the Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758 (2d Cir. 1991). The factors of judicial economy, convenience, fairness, and comity weigh heavily in favor of declining to exercise jurisdiction over remaining state-law claims. *Castellano*, 937 F.2d at 758.

Furthermore, exercising supplemental jurisdiction over Plaintiffs' claims based on the New York Constitution "would violate fundamental principles of federalism and comity" because "New York State has a definite interest in determining whether its own laws comport with the New York Constitution." *Schulz v. The New York State Executive*, 960 F. Supp. 568, 580-81 (N.D.N.Y. 1997) (citing *Young v. New York City Transit Authority*, 903 F.2d 146, 163-64 (2d Cir. 1990)). While the sum and substance of Plaintiffs' state claims are the same as their federal claims, these claims allege violations of the New York Constitution and various New York statutes. (2d Am. Compl. ¶¶ 7, 188, 189.) Therefore, this Court should not exercise supplemental jurisdiction over Plaintiffs' state claims, and those claims should be dismissed.

## D. Claims Against TLC and Individual Defendants Should be Dismissed

### 1. Claim Against Defendant TLC Should be Dismissed

Plaintiffs' claims against Defendant TLC, an agency of the City of New York, should be dismissed because "a New York City agency cannot be sued in its own capacity." *Gabris*, 2005 U.S. Dist. Lexis 23391, at *7 n.4. "All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city [sic] of New York and not in that of any agency, except where otherwise provided by law." N.Y. Charter, ch. 17, § 396 (2009); *Davis v. City of N.Y.*, No. 00 Civ. 4309 (SAS), 2000 WL 1877045 n.1 (S.D.N.Y. Dec. 27, 2000) (concluding that the New York Police Department is an agency of the City of New York and

therefore a non-suable entity); *Siino v. Dep't of Educ. of the City of N.Y.*, 843 N.Y.S.2d 828, 829

(App. Div. 2007) (finding that the Department of Investigation is not a proper party to litigation).

### 2. Claims Against Defendants Daus, Scanlon, and Scwecke, in their Individual and Official Capacities, Should be Dismissed

Plaintiffs allege that the individual Defendants have "willfully, knowingly, and with []

specific intent," conspired to "deprive plaintiffs of their constitutional rights . . . ." (2d Am.

Compl. ¶¶ 164, 168, 174.) With respect to Daus, Plaintiffs allege that he "applies his own

unwritten rules, governing by personal whim . . . , den[ying] almost every reapplication without

reference to the Administrative Code or TLC Rules," and "intentionally frustrat[ing] the

legitimate claims of entitlement that applicants have to a taxi driver's license." (2d Am. Compl.

¶¶ 5, 6.)

Defendants cannot be liable in their individual capacities because they are protected by

qualified immunity. Qualified immunity shields government officials who perform discretionary-

as distinct from ministerial-functions from liability for damages arising from their actions which

do " 'not violate clearly established statutory or constitutional rights of which a reasonable

person would have known.' " *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991)

(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The immunity question turns on

whether it was objectively reasonable for officials to believe that their decisions did not violate

Plaintiffs' clearly established constitutional rights. *McEvoy v. Spencer*, 124 F.3d 92, 96 (2d Cir.

1997). Resolution of this question entails inquiry into the nature and extent of rights asserted,

and whether Plaintiffs' entitlement is well-settled. *Id.* (citing *Kaluczky v. City of White Plains*, 57

F.3d 202, 206 (2d Cir. 1995)). As noted above, Plaintiffs have no such claim of entitlement in

their future licenses. Further, the ALJs and TLC chairperson and deputy commissioner all have

discretionary functions within the TLC. As a result, qualified immunity, which exists to protect

officials and encourage the vigorous exercise of official authority, should apply to them. *See Walz*, 46 F.3d at 169 (citing *Harlow*, 457 U.S. at 807).

A suit brought against a public officer in his official capacity is treated as a suit against the government. *P.C. v. McLaughlin*, 913 F.2d 1033, 1039 (2d Cir. 1990) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-68 (1985)). Official capacity generally represents only another way of pleading an action against an entity of which an officer is an agent. *Kentucky*, 473 U.S. at 165. In an official capacity suit the entity's "policy or custom" must have played a part in the violation of federal law. *Id.* at 166. Plaintiffs have failed to allege facts sufficient to demonstrate that an officially adopted policy or custom of the City of New York (the proper municipal defendant) caused a violation of Plaintiffs' federally protected rights. *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (stating that a mere assertion of a custom or policy is not sufficient to sustain a § 1983 claim against a municipal defendant in the absence of any allegations of fact). Therefore, Plaintiffs' official capacity claims should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Defendants' Motion to Dismiss (Doc. No. 13) be **GRANTED**, and that Plaintiffs' Second Amended Complaint be **DISMISSED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Sidney H. Stein, 500 Pearl Street, Room 1010, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in

the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); FED. R. CIV. P. 72, 6(a), 6(d).

**Dated: August 19, 2010**
**New York, New York**

**Respectfully Submitted,**

*[signature]*

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**

Counsel for Plaintiffs
Daniel L. Ackman
12 Desbrosses Street
New York, New York 10013

Counsel for Defendants
Mark W. Muschenheim
Diana Marsh Murray
NYC Law Department, Office of the
Corporation Counsel
100 Church Street
New York, New York 10007